IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEVEARL BACON, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No. 05-714-JJF |
| | : |
| WARDEN CARROLL, CAPTAIN | : |
| SAGERS, LT. FORBES, C/O SCOTT, | : |
| C/O KEMP, C/O MS. D. TINGLE, | : |
| and SGT. KUSHEUL, | : |
| | : |
| Defendants. | : |

Devearl L. Bacon, Pro se Plaintiff, James T. Vaughn Correctional
Center, Smyrna, Delaware.

Catherine C. Damavandi, Esquire, Deputy Attorney General,
Delaware Department of Justice, Wilmington, Delaware.  Attorney
for Defendants.

**OPINION**

June  1 2 , 2009
Wilmington, Delaware

Farnan, District Judge

Presently before the Court are Plaintiff's Motion To Amend/Correct, Plaintiffs' Motion For Preliminary Injunction, and Defendants' Motion For Summary Judgment. (D.I. 142, 143, 152.) For the reasons discussed below, the Court will grant in part and deny in part Plaintiff's Motion To Amend/Correct, will deny as moot Plaintiff's Motion For Preliminary Injunction, and will grant Defendants' Motion For Summary Judgment.

**I.    BACKGROUND**

Plaintiff was convicted of five counts of Robbery First Degree, one count of Carjacking First Degree, two counts of Aggravated Menacing, two counts of Possession of a Firearm During the Commission of a Felony, two counts of Possession of a Deadly Weapon by a Person Prohibited, and two counts of Wearing a Disguise During the Commission of a Felony and sentenced to thirty-four years of imprisonment to be followed by twelve years of probation.  His convictions and sentence were affirmed on direct appeal.  Bacon v. State, 801 A.2d 10 (Del. 2002) (table decision).  The Delaware Superior Court in and for New Castle County ("Superior Court") denied his petition for post-conviction relief and the denial was affirmed by the Delaware Supreme Court. See Bacon v. State, 903 A.2d 322 (Del. Jun 21, 2006) (table decision), cert. denied, 549 U.S. 1036 (2006); State v. Bacon,

1

No. 0351-0352-R1, 0356-0358-R1, 0358-R1, 1671-1673-R1, IN 00-7-
0349-R1, IN 00-07-1666-1667R1), 2005 WL 2303810 (Del. Super. Ct.
Aug 29, 2005).

Plaintiff filed his Complaint on September 30, 2005,
followed by several amendments.[1]  (D.I. 2, 11, 26, 30, 32, 38,
53.)  Plaintiff alleges that his incoming and outgoing legal mail
have been withheld or returned to the sender, he has not been
permitted to witness the opening of his legal mail, and he has
had to use other parties to send and receive legal mail.  The
allegations concern Plaintiff's pro se filings before various
Delaware State Courts, including a petition for post-conviction
relief and a civil matter.  The Complaint and Amendments refer to
five instances of alleged violations of Plaintiff's First
Amendment right to free speech and access to the courts, as well
as alleged retaliation by one Defendant: (1) October 3, 2004,
against Defendants Warden Carroll ("Carroll"), Captain Sagers
("Sagers"), Lt. Forbes ("Forbes"), and C/O W. Kuscheul
("Kuscheul) when Plaintiff did not witness the opening of his
legal mail, the envelope was opened, and Plaintiff did not

---

[1]The Amendment found at D.I. 30 is against Defendant C/O
Hansen and alleges wrongful conduct on April 4, 2006.  Plaintiff
voluntarily dismissed Hansen as a Defendant on July 17, 2007.
(See D.I. 84.)  Despite the voluntary dismissal, Plaintiff refers
to the April 4, 2006 act in his opposition to Defendants' Motion
For Summary Judgment.  (D.I. 159 at 35.)

2

receive an Order from the Superior Court (D.I. 2, 11, 53); (2) January 3, 2005,[2] against Carroll, Sagers, and Forbes, when a third-party sent Plaintiff's Reply to State's Response to Plaintiff's Motion for Post-Conviction relief, and the Reply was missing for three months until it was finally received by Plaintiff's typist(D.I. 2)[3]; (3) September 14, 2005, against Carroll, Sagers, and Forbes, when legal mail was twice returned to the Superior Court and the Honorable Susan C. DelPesco ("Judge DelPesco") ordered hand-delivery to Plaintiff of the August 29, 2005 Order (D.I. 2, 26); (4) January 5, 2006, against C/O Ms. Scott ("Scott") when Plaintiff entrusted Scott to mail his legal mail to Mrs. Meyer, his typist, but Mrs. Meyer did not receive the mail until January 23, 2006, causing Plaintiff to submit to the Delaware Supreme Court a handwritten brief instead of a typed brief. When Plaintiff did not prevail, he amended the Complaint to allege retaliation (D.I. 26, 38); and (5) January 17, 2006 to April 24, 2006, against Defendants C/O Mr. Kemp ("Kemp") and C/O Ms. Tingle ("Tingle"), when on April 24, 2006, Plaintiff received

---

[2]The Complaint provides a January 3, 2005 date, but Plaintiff's grievance provides a January 2, 2005 date. (D.I. 2, ex. C.) In their Motion For Summary Judgment, Defendants use the January 2, 2005 date. (D.I. 153, at 9.)

[3]The third-party is inmate Jeffrey Fogg ("Fogg") who assisted Plaintiff in preparing his post-conviction relief filings. Plaintiff's typist is Mrs. Jeanne P. Meyer ("Mrs. Meyer"). Mrs. Meyer is Fogg's mother.

3

a box of legal materials from Kemp and Tingle that contained a
lawsuit he had mailed for filing in the Superior Court during the
week of January 17, 2006, and a "Notice of Non-Conforming
Documents" from the Superior Court, dated February 1, 2006 (D.I.
32).

## II.  MOTION TO AMEND/CORRECT

Plaintiff has been given leave to amend his Complaint
several times during the pendency of this litigation.  Plaintiff
last amended his Complaint on October 5, 2006.  (See D.I. 53,
84.)  The alleged acts occurred from October 3, 2004 to April 24,
2006.  Plaintiff's current Motion To Amend was filed on February
2, 2009 and contains exhibits dating from mid-October 2005 to
October 2008.  (D.I. 142, exs. E1-E96.)  Plaintiff contends that
Defendants continue to violate his constitutional rights.
Defendants did not object to the Motion.

"After amending once or after an answer has been filed, the
plaintiff may amend only with leave of the court or the written
consent of the opposing party, but 'leave shall be freely given
when justice so requires.'"  Shane v. Fauver, 213 F.3d 113, 115
(3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)).  The Third
Circuit has adopted a liberal approach to the amendment of
pleadings to ensure that "a particular claim will be decided on
the merits rather than on technicalities."  Dole v. Arco Chem.

4

Co., 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted).
Amendment, however, is not automatic. See Dover Steel Co., Inc.
v. Hartford Accident and Indem., 151 F.R.D. 570, 574 (E.D. Pa.
1993). Leave to amend should be granted absent a showing of
"undue delay, bad faith or dilatory motive on the part of the
movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by
virtue of the allowance of the amendment, futility of amendment,
etc." Foman v. Davis, 371 U.S. 178, 182 (1962); See also Oran v.
Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Each time Plaintiff believes he is wronged, he files a
Motion To Amend the Complaint. To date, including the current
Motion, Plaintiff has filed nine Motions To Amend. (D.I. 11, 26,
30, 31, 32, 38, 53, 118, 142.) Most have been granted. The
Court will once again grant Plaintiff's Motion To Amend to the
extent that Exhibits 1 through 4, and 6 through 13 are included
as exhibits to the Complaint.

Plaintiff's claims are limited to the five remaining viable
claims in the Complaint and Amended Complaint as outlined above.
Accordingly, the Court will grant in part and deny in part the
Motion To Amend. (D.I. 142.)

### III. SUMMARY JUDGMENT

#### A. Standard

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific

facts showing that there is a genuine issue for trial.'"
Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e)). If the nonmoving party fails to make a
sufficient showing on an essential element of its case with
respect to which it has the burden of proof, the moving party is
entitled to judgment as a matter of law. See Celotex Corp. v.
Catrett, 477 U.S. 317, 322 (1986).

## B. DISCUSSION

Defendants move for summary judgment on the grounds that
none of Plaintiff's claims are supported by the evidence or by
the law and that all access to the courts claims involve
litigation that was ultimately dismissed as frivolous and/or
lacking substantive merit. (D.I. 153.) Plaintiff responds that
Defendants' actions are a "clear abuse of power and behavior that
would shock the conscience."[4] (D.I. 159.) Plaintiff contends he
suffered actual damage as Defendants' action resulted in
Plaintiff's losing his appeal and caused him to suffer from
stress and anxiety. Plaintiff also contends that Defendants'

---

[4]Plaintiff's Response also includes a request to "re-visit"
the actions of Lisa Merson, grievance board chairperson, a Motion
To Amend related to D.I. 142, and an investigation of Law Library
practices and procedures at the VCC. (D.I. 159.) The Court has
considered Plaintiff's requests and they will be denied.
Plaintiff's formal Motion To Amend (D.I. 142) is discussed
elsewhere in this Opinion.

pattern of behaviors and abuse of power in impeding his access to
the courts is an actual injury itself.

## 1. First Amendment

Initially, the Court notes that Plaintiff raises two
separate First Amendment claims: one alleging interference with
his legal mail in violation of his right to free speech, and the
other alleging interference or denial of access to the courts.

### a. Right to Free Speech

"[S]tate prisoners have an interest protected by the First
Amendment in being present when their incoming legal mail is
opened."[5] Jones v. Brown, 461 F.3d 353, 355 (3d Cir. 2006) "[A]
pattern and practice of opening properly marked incoming court
mail outside an inmate's presence infringes communication
protected by the right to free speech." Bieregu v. Reno, 59 F.3d
1445, 1452 (3d Cir. 1995). Such a state pattern and practice or
explicit policy "'deprives the expression of confidentiality and
chills the inmates' protected expression, regardless of the
state's good-faith protestations that it does not, and will not,
read the content of the communications.'" Fontroy v. Beard, 559
F.3d 173, 175 (3d Cir. 2009) (quoting Jones, 461 F.3d at 359.)

_____

[5]The Third Circuit recently referred to legal mail as
incoming mail from an attorney or court. See Fontroy v. Beard,
559 F.3d 173, 175 (3d Cir. 2009).

This is so because "the only way to ensure that mail is not read
when opened . . . is to require that it be done in the presence
of the inmate to whom it is addressed." Bieregu, 59 F.3d at 1456
(citing Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974)).

"Protection of an inmate's freedom to engage in protected
communications is a constitutional end in itself." Lewis v.
Casey, 518 U.S. 343, 351 (1996). Therefore, a plaintiff need not
allege any consequential injury stemming from a First Amendment
violation, aside from the violation itself. Jones v. Brown, 461
F.3d at 360.

### b.  Access to the Courts

Plaintiff also raises claims of denial or interference with
his access to the courts based upon interference with his mail.
Prisoners must be allowed "adequate, effective and meaningful"
access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977).

To establish standing for an access to the courts claim,
prisoners must assert "(1) that they suffered an actual injury-
that they lost a chance to pursue a nonfrivolous or arguable
underlying claim; and (2) that they have no other remedy that may
be awarded as recompense for the lost claim other than in the
present denial of access suit." Monroe v. Beard, 536 F.3d 198,
205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403,
415 (2002)) (internal quotation marks omitted). "The complaint

9

must describe the underlying arguable claim well enough to show
that it is 'more than mere hope,' and it must describe the 'lost
remedy.'" Monroe, 536 F.3d at 205-206 (quoting Christopher, 536
U.S. at 416-17); see Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir.
1997) (dismissing prisoner's claim that corrections officers
opened his outgoing legal mail because the prisoner suffered no
actual injury as a result of the alleged interference with his
outgoing legal mail, where his papers arrived and the court
adjudicated his claim). An actual injury is shown only where a
nonfrivolous, arguable claim is lost. Christopher, 536 U.S. at
415.

## 2. October 3, 2004

Plaintiff alleges there was tampering of legal mail he
received from the Superior Court. He alleges that Defendants
Carroll, Sagers, Forbes, and Kuscheul were involved in this
alleged constitutional deprivation. Defendants contend that the
claim is frivolous inasmuch as the Court docket indicates that no
Order was issued by the Court, Plaintiff has pointed to no
personal involvement by Carroll, Sagers, and Forbes, and
Plaintiff has no standing to pursue an access to the courts
claim.

Plaintiff's Criminal Case, State v. Bacon, was pending
before the Superior Court on October 3, 2004. The Superior Court

10

docket for the case indicates that on September 17, 2004, the
Superior Court received Plaintiff's Rule 61 Motion For
Postconviction Relief. (D.I. 154, ex. A7.) A few days later, on
September 21, 2004, the Prothonotary's Office sent the prosecutor
a copy of Plaintiff's Motion. (Id. at A7, A12.) According to
Plaintiff, when he received the mailing on October 3, 2004, the
document contained "torn pages," and three Court docket pages. A
notation on the docket states, "You have to mail this out
yourself - mailroom." (D.I. 160, App. B at ex. 7.) It appears
the notation was directed to Plaintiff to advise him that it was
his responsibility to provide a service copy to the prosecutor,
but it is unknown if the notation is from the Superior Court or
from the VCC mailroom. Exhibits indicate that the envelope used
was a plain envelope, with no postage and marked "received
October 3, 2004." (Id. at ex. 6.)

    After Plaintiff received the Court docket he was contacted
on October 12, 2004, by Maria Lyons ("Lyons"), Staff Paralegal at
the MHU Law Library, and advised that the matter had been
referred to her for investigation. (D.I. 160, App. A at A-2.)
Lyons indicated that she had spoken to different personnel
regarding the issue, but that the person who had originally
handled the item was on vacation. (Id.) Lyons looked over the
mail logs and observed that the item had been delivered to

11

Plaintiff and that he had signed for it. (Id.) The Incoming Legal/Certified Mail Log Sheet was prepared by Lt. Oney and indicates that Plaintiff received legal mail from the Superior Court on October 3, 2004. (D.I. 143, ex. A17.) At the bottom of the Form it states "Legal Mail Received By" followed by the signature of Carlton Parks. (Id.) Kuscheul was working in Buildings 24 and 21 on October 3, 2004, (D.I. 154, ex. A16.)

On October 14, 2004, Lyons reported that her investigation revealed that the Court docket was in one of the MHU/SHU mailbags, not attached to anything. (D.I. 160, App. A at A-1.) The docket was placed in an envelope and delivered to Plaintiff with the legal mail. (Id.) Lyons stated that she could "try to guess all day as to what happened but [she] had no proof and [could] find no answers." (Id.)

In the meantime, on October 12, 2004, Plaintiff requested a current Court docket to verify that the Superior Court had not ruled on his Rule 61 Motion. (D.I. 154, ex. A8.) At the same time, Plaintiff advised the Superior Court that his legal mail had been opened by the Department of Correction ("DOC"). (Id.) The letter was referred to Judge DelPesco and a new docket was sent to Plaintiff on October 18, 2004. (Id.) The Court docket does not indicate that the Superior Court entered an Order following the filing of Plaintiff's Motion For Postconviction

12

Relief on September 17, 2004, or prior to October 3, 2004, when Plaintiff received the opened legal mail that contained the Court docket. (Id. at A7-A8.)

Defendants argue they have no personal involvement in the alleged wrongful acts. A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207-08; see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). It is also well established that liability in a civil rights action cannot be predicated solely on the doctrine of respondeat superior. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior) (citing Rode, 845 F.2d at 1207). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode, supra.

Nothing in the record demonstrates any of the Defendants alleged to have violated Plaintiff's constitutional rights on October 3, 2004 had the requisite personal involvement. Indeed, the record contains no mention of Carroll, Sagers, and Forbes.

While Kuscheul worked that day, the record does not reflect that
he was the person who opened Plaintiff's legal mail.

To the extent that Plaintiff contends his free speech rights
were violated because his legal mail was not opened in his
presence, this single, isolated incident, without any evidence of
improper motive, is nothing more than negligence. See Davis v.
Goord, 320 F.3d 346, 351 (2d Cir. 2003) (accidental opening of
one piece of constitutionally protected legal mail did not give
rise to a constitutional claim); Smith v. Maschner, 899 F.2d 940,
944 (10th Cir. 1990) (isolated inadvertent incidents of opening
inmate's legal mail do not state a constitutional claim); Gardner
v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (isolated,
inadvertent instances of legal mail opened outside of an inmate's
presence are not actionable); Beese v. Liebe, 51 F. App'x 979,
981 (7th Cir. 2002) (four pieces of legal mail opened outside of
inmate's presence did not rise to the level of a constitutional
violation where inmate presented no evidence that his mail was
not intentionally opened); Bryant v. Winston, 750 F. Supp. 733,
734 (E.D. Va. 1990) (isolated incident of mail mishandling, which
is not part of any pattern or practice, is not actionable under §
1983). Mere negligence in and of itself does not violate a
prisoner's constitutional rights. See Daniels v. Williams, 474
U.S. 327, 330-30 (1986).

Additionally, Plaintiff has no standing for his access to courts claim relative to the October 3, 2004 occurrence inasmuch as the record fails to support a finding that Plaintiff suffered an actual injury as a result of the interference with Plaintiff's legal mail.  The Superior Court docket indicates that the Court had not ruled on Plaintiff's Post Conviction Motion, Plaintiff was provided with a new Court docket, and Plaintiff met all filing deadlines.  (D.I. 154, exs. A2-10.)  Plaintiff did not lose a chance to pursue his claims, whether considered frivolous or nonfrivolous, arguable or non-arguable.  When Judge DelPesco ruled on Plaintiff's Motion For Postconviction relief, she held that Plaintiff had not presented adequate grounds for relief from his convictions or sentence.[6]  (Id. at A19-A30.)

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment as to the October 3, 2004 issue.

**3. January 3, 2005**

Plaintiff alleges that on January 3, 2005,[7] a third-party,

---

[6]Plaintiff raised six grounds for relief.  Judge DelPesco found that grounds one, two, and three had no merit; grounds three and four failed because Plaintiff did not show that counsel was ineffective; and ground six had no factual basis.  (D.I. 154, exs. A19-A30.)

[7]The Complaint provides the date of January 3, 2005, but Plaintiff's grievance provides the date of January 2, 2005.  (D.I. 2, ex. C.)  In their Motion For Summary Judgment, Defendants use the January 2, 2005.  (D.I. 153, at 9.)

Fogg, mailed Plaintiff's arguments for his Reply to the State's Response to Plaintiff's Motion for Post-Conviction relief.  That mail was lost for three months by mail room staff until it was received by Plaintiff's third-party aid, the typist.[8]  Plaintiff alleges that Carroll, Sagers, and Forbes are responsible, and their acts denied him access to the courts.[9]  Defendants move for summary judgment on the grounds that Plaintiff does not have standing to raise a claim for Fogg and, further, Plaintiff suffered no actual injury as the Superior Court allowed him to file his Reply.

On April 11, 2005, Plaintiff wrote to Judge DelPesco and advised her there was a delay in filing his Reply due to problems with the mail.  (D.I. 160, App. B at ex. 32.)  Plaintiff explained that Fogg mailed Plaintiff's arguments to Mrs. Meyer, the typist, on January 2, 2005.  (Id.)  "After grievances were filed and much searching," someone discovered that the sealed envelope, ready for mailing, was lying on top of a filing cabinet

_____

[8]The mail to Plaintiff's typist is not considered "legal mail" since it was mailed to a private person by a private person and no attorney or court was involved  Therefore, the Court considers this as an access to the courts claim only and not a free speech claim.

[9]The Court notes that Defendants refer only to Scott in this argument.  Plaintiff, however, did not raise this claim against Scott; it is raised against Carroll, Sagers, and Forbes. Regardless, Plaintiff is not entitled to relief on this claim.

16

with papers on top of it.  (Id.)  The envelope was mailed to Mrs.
Meyer who telephoned and explained the situation to Judge
DelPesco's law clerk.  (Id.)  There was an additional delay in
filing the Reply due to the hospitalization of Mrs. Meyer's
husband.  (Id.)  The Court granted Plaintiff's Motions for an
enlargement of time to file a Reply and to File an Amended Reply.
(D.I. 154, ex. A19.) Plaintiff filed his "complete" Reply on May
18, 2005.[10]  (D.I. 154, ex. A9.)

Initially, the Court notes that Plaintiff has no standing to
raise a claim on behalf of Fogg.  "The 'core component'" of the
requirement that a litigant have standing to invoke the authority
of a federal court "is an essential and unchanging part of the
case-or-controversy requirement of Article III." DaimlerChrysler
Corp. v. Cuno, 547 U.S. 332, 342 (2006)(citations omitted).  "A
plaintiff must allege personal injury fairly traceable to the
defendant's allegedly unlawful conduct and likely to be redressed
by the requested relief." Allen v. Wright, 468 U.S. 737, 751
(1984).  Also, "a plaintiff must demonstrate standing separately
for each form of relief sought." DaimlerChrysler Corp., 547 U.S.
at 352 (citations omitted).

It may be that third-party standing would allow Plaintiff

_____

[10]Plaintiff had previously filed a Reply on December 18,
2004 and December 20, 2004; moved to withdraw his Reply on
January 10, 2005; and filed a another Reply on April 14, 2005.
(D.I. 154, ex. A9.)

17

to proceed with this claim.  The Third Circuit determines the
appropriateness of third-party standing with a three part test.
Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir. 2003) (citations
omitted).  "To successfully assert third-party standing: (1) the
plaintiff must suffer injury; (2) the plaintiff and the third
party must have a 'close relationship'; and (3) the third party
must face some obstacles that prevent it from pursuing its own
claims."  Id.

Here, Fogg, not Plaintiff, mailed the documents to Mrs.
Meyer.  If Fogg believed there was a deprivation of his
constitutional rights, he could have filed a lawsuit on his own
behalf.  Finally, the record does not demonstrate actual injury
to Plaintiff, and therefore, the Court finds that Plaintiff lacks
standing to raise the access to the court claim.  Even with the
delayed mail delivery to his typist, Plaintiff did not lose a
chance to pursue his claims.  The Superior Court granted him an
extension of time and allowed him to withdraw, amend, and file a
"complete" Reply.

For the above reasons, the Court will grant Defendants'
Motion For Summary Judgment as to the January 3, 2005 issue.

**4.  August 29, 2005 Order, Delivered September 14, 2005**

Plaintiff alleges that Carroll, Sagers, and Forbes delayed
delivery of legal mail and delayed his access to the courts.  On

18

two occasions Judge DelPesco's August 29, 2005 Order denying

Plaintiff Motion For Postconviction Relief was sent to Plaintiff,

and on two occasions it was returned, not delivered. The Order

was hand-delivered to Plaintiff on September 14, 2005.

Defendants argue that summary judgment is appropriate

because the allegations are frivolous. Defendants contend

Plaintiff cannot demonstrate any wrongdoing by Defendants, and

Plaintiff cannot prove actual injury. Plaintiff responds that he

was never informed of the non-delivery in derogation of DOC

rules, that the non-delivery is "a clear demonstration of foul

play," and that he has received many envelopes containing legal

mail that did not have his SBI Number on the envelope.

In the first delivery attempt of the Order, the envelope

with a return address from the Superior Court, was marked "return

to sender" "postage due," "attempted not known" and returned to

Judge DelPesco's Office on September 6, 2005. (D.I. 154, ex.

A33.) The second time, the Order was sent via "State Mail" and

returned to Judge DelPesco's Office on September 18, 2005, with

the handwritten notation "Not DCC." (Id.) Neither envelope

contained the SBI Number of Plaintiff. Instead, the SBI Number

listed was actually the number of Plaintiff's Superior Court

criminal case. As noted above, the Order was hand-delivered to

Plaintiff on September 14, 2005, and the delivery was witnessed

by Cindy Atallian and Thomas Seacord.  (Id. at A32.)  Plaintiff
filed a Notice Of Appeal on September 27, 2005, and the Court
entered a briefing schedule.  (D.I. 154, exs. A35, A37.)

Plaintiff contends he suffered actual injury because he lost
fourteen to fifteen days due to the late notification, and he
understood that he had thirty days to file a Notice of Appeal
from the time of the denial of the Rule 61 Motion.  Plaintiff's
position is without merit.

Although there is no evidence that Plaintiff's mail was
opened, and assuming Plaintiff raises a free speech claim, the
record does not support a finding that Plaintiff's mail was
intentionally mishandled.  Rather, it appears the legal mail was
returned to the sender based upon insufficient postage and an
incorrect SBI number, acts not attributable to Defendants
Moreover, if anything, the return of the mail was negligence.

With regard to the access to the court claim, the record
does not demonstrate actual injury to Plaintiff, and once again
the Court finds that Plaintiff lacks standing for the claim.
Even with the late notice, Plaintiff timely filed a Notice of
Appeal, the Delaware Supreme Court entered a briefing scheduling
order, and Plaintiff submitted his brief.  (D.I. 154, ex. A37.)
In affirming the "well-reasoned opinion" of Judge DelPesco
denying postconviction relief, the Delaware Supreme Court

carefully considered the parties briefs and the record below.
(Id. at A112.)  The Supreme Court found that the Superior Court
did not err in concluding that Plaintiff's six claims of
ineffective assistance of counsel, lacked substantive merit.
(Id.)  Plaintiff did not lose a chance to pursue his claims
before the Delaware Supreme Court.  He pursued his claims, and
they were soundly rejected.

For the above reasons, the Court will grant Defendants'
Motion For Summary Judgment for the claim surrounding the August
29, 2005 Order.[11]

### 5.  January 5, 2006

Plaintiff alleges that there was interference in his access
to the courts when Scott caused delay of mail sent to his typist.
He also alleges retaliation.[12]  Inmate Fogg assisted Plaintiff in
preparing his brief before the Delaware Supreme Court.  Plaintiff
alleges that on January 5, 2006, he entrusted Scott with an
envelope addressed to Mrs. Meyer, but the envelope was not mailed
from the prison until sixteen days later.  Plaintiff claims that
because of the delay, he suffered a violation of his right to

---

[11]Additionally, there is nothing in the record to suggest
that Carroll, Sagers, and Forbes had personal involvement in the
acts surrounding the returned mail.

[12]Discussed later in this Opinion.

free speech and access to the courts.[13] Plaintiff was forced to file a half-typed, half-handwritten opening brief, that was later amended. Defendants move for summary judgment on the grounds that Plaintiff cannot maintain an access to the courts claim with respect to personal mail sent to an outside party, and Plaintiff suffered no actual injury.

Plaintiff's opening brief before the Supreme Court was due on November 14, 2005. (D.I. 154, exs. A37, A40.) On three occasions Plaintiff moved for extensions of time to file his opening brief. (Id. at exs. A37-A38.) After granting the third extension, the Court advised Plaintiff there would be no further extensions and that his brief was due on January 30, 2006. (Id. at A38.) Plaintiff filed his opening brief on January 20, 2006. (Id.) It contained handwritten pages. (Id. at A38, A55.) A week later, Plaintiff moved the Delaware Supreme Court to allow him to replace the handwritten pages for typed pages, and the Delaware Supreme Court granted the Motion. (Id. at A38, A55.) On June 21, 2006, the Delaware Supreme Court affirmed the judgment of the Superior Court in all respects. (Id. at A112.)

Plaintiff claims that he suffered irreparable injury as a

---

[13]The mail sent to Plaintiff's typist is not considered "legal mail," and the Court considers this claim as only an access to the courts claim.

result of the Delaware Supreme Court's ruling. He claims that

because the Delaware Supreme Court carefully considered his

claims, "[w]e will never know what the probability may have been

had Plaintiff filed the brief which Mrs. Meyer and Fogg [were]

preparing."[14]   (D.I. 159 at 23.)   Plaintiff also claims harm on

the grounds that his federal habeas corpus case was not reviewed

by this Court because the grounds raised were procedurally barred

as untimely and the State Court was his only avenue for review.[15]

Once again, the Court finds that Plaintiff lacks standing to

raise the access to the court claims. As discussed above, the

Delaware Supreme Court found that Plaintiff's postconviction

_____

[14]The record indicates the some of the delay in preparing
Plaintiff's brief is attributable to Fogg. On January 3, 2006,
Mrs. Meyer wrote to Plaintiff and stated that Fogg was so busy
with his own case that he had not had time to work on
Plaintiff's.   (D.I. 154, ex. A45.)

[15]In Bacon v. Carroll, Civ. No. 06-519-JJF, 2007 WL 2727168
(D. Del. Sept. 17, 2007), this Court noted that the Delaware
Supreme Court affirmed Plaintiff's conviction and sentence on
July 1, 2002, and Plaintiff did not file a petition for a writ of
certiorari in the United States Supreme Court. As a result, his
conviction became final for the purposes of § 2244(d)(1) on
September 30, 2002, and Plaintiff had until September 30, 2003 to
file a timely habeas petition, but Plaintiff did not file his
Petition until August 16, 2006, approximately three years after
the statute of limitations expired in 2003. Plaintiff's claim
was time-barred, unless statutory or equitably tolling applied.
This Court concluded that the statutory tolling principles were
inapplicable since Plaintiff's Rule 61 Motion, filed on September
17, 2004, did not toll the limitations period as it was filed
more than a year after the expiration of the limitations period.
This Court also found that equitable tolling was inapplicable.

claims lacked substantive merit. The record does not support a finding that the outcome would have been different if he had submitted the brief prepared by Mrs. Meyer and Fogg. Plaintiff's assertion of a different outcome is nothing more than "mere hope."

For these reasons, the Court will grant Defendants' Motion For Summary Judgment as to the January 5, 2006 issue.

### 6.   January 17, 2006 to April 24, 2006

On April 24, 2006, Plaintiff received a box of legal materials from Kemp and Tingle which contained a lawsuit he mailed for filing to the Superior Court during the week of January 17, 2006. (D.I. 32.) A "Notice of Non-Conforming Documents" from the Superior Court, dated February 1, 2006, was included with the returned documents. (D.I. 32, ex. B.) Plaintiff alleges that Kemp and Tingle interfered with his right to access the courts because of the delay from the time the Superior Court returned him the documents to the time he received them. Plaintiff alleges that due to the delay, he missed the limitation period deadline. Defendants move for summary judgment on the grounds that the claim is frivolous, there is no evidence of personal involvement of Kemp and Tingle, and no evidence of Plaintiff's actual injury.

The record reflects that Plaintiff mailed a civil lawsuit to

the Superior Court and it was received on January 27, 2006.
(D.I. 160, app. B, ex. 99.) On February 1, 2006, the Superior
Court rejected the filing as "non-conforming" as the filing
required a "CIS" with all the information, it lacked a
certificate stating the value of the case was over one hundred
thousand dollars, additional copies were needed for each
defendant, and the addresses of all defendants needed to be on
the praecipe and Plaintiff needed to include the Attorney
General's Office. (Id. at exs. 102-103.)

Plaintiff explains that during the month of March he
requested the whereabouts of the box of legal materials.
Paralegal Lyons advised Plaintiff that she personally mailed his
materials to the Superior Court. Because the statute of
limitations date, May 1, 2006, was nearing, and Plaintiff had yet
to hear from the Superior Court, during the last week of March he
decided to file an identical lawsuit in this Court. (D.I. 159, at
31.) Plaintiff signed his Complaint on April 21, 2006, it was
mailed to this Court, and docketed on April 24, 2006. (D.I. 154,
exs. A247-A335; Bacon v. Carroll, Civ. No. 06-267-JJF (D. Del.),
D.I. 2.) On April 24, 2006, Kemp and Tingle arrived at
Plaintiff's cell and gave him the box of legal materials
Plaintiff had mailed to the Superior Court. (D.I. 159, at 32.)
Plaintiff contends, without support from the record, that "the

25

only force who has a direct relationship involving this gross abuse of power" is Kemp and Tingle.

Plaintiff's case filed in this Court, Civ. No. 06-267-JJF, was dismissed for lack of jurisdiction and, in the alternative, as frivolous or for failure to state a claim upon which relief may be granted.  (Id. at D.I. 5.)  This Court also declined to exercise supplemental exercise jurisdiction over the state law claims.  (Id.)  Plaintiff appealed the dismissal and the appeal was dismissed pursuant 28 U.S.C. § 1915(e)(2)(B).[16]

The record reflects that the only personal involvement of Kemp and Tingle occurred on April 24, 2006, when they delivered Plaintiff's box of legal materials mailed from the Superior Court, and the record does not reflect that Kemp and Tingle were responsible for the delay in delivery.  The delivery occurred three days after Plaintiff exercised his right to access the court and filed his civil claim in this Court.  Moreover, the record does not reflect, and Plaintiff makes no claim, that once he received the non-conforming materials on April 24, 2006, he resubmitted the materials for filing to the Superior Court, even

---

[16]Section 1915(e)(2)(B) provides that the court shall dismiss the case at any time if the court determines that the appeal is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

though he has sufficient time to do so prior to the running of the limitations period.

Finally, the Court finds that there is no evidence of actual injury to Plaintiff as a result of the delay in his receipt of the legal materials from the Superior Court. Plaintiff asserts that were it not for the delay in receipt of the legal materials from the Superior Court requiring the filing in this Court, "there was a 'probability' Plaintiff could have 'settled' on the claim in the Superior Court." As noted above, the filing in this Court was dismissed on a number of grounds, including, frivolity. Plaintiff's speculation that he could have settled his claim had it been filed in the Superior Court is nothing more than "mere hope."

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment as to this issue.

## 7. Retaliation

Plaintiff amended the Complaint to add a retaliation claim against Scott following the Delaware Supreme Court's affirmance of the denial of Plaintiff's Rule 61 Motion For Postconviction Relief. An official who retaliates against an inmate for exercising his constitutional rights may be liable under § 1983. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

"A prisoner alleging retaliation must show (1)

27

constitutionally protected conduct, (2) an adverse action by
prison officials sufficient to deter a person of ordinary
firmness from exercising his constitutional rights, and (3) a
causal link between the exercise of his constitutional rights and
the adverse action taken against him." Mitchell v. Horn, 318 F.3d
523, 530 (3d Cir. 2003) (internal quotation marks and citations
omitted). To establish a causal link, the prisoner must show
that the "constitutionally protected conduct was 'a substantial
or motivating factor'" in the decision to take adverse action.
Rauser, 341 F.3d at 333-34 (quoting Mount Healthy City School
Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). However,
"once a prisoner has demonstrated that his exercise of a
constitutional right was a substantial or motivating factor in
the challenged decision, the prison officials may still prevail
by proving that they would have made the same decision absent the
protected conduct for reasons reasonably related to legitimate
penological interest." Rauser, 241 F.3d at 334; see also Carter
v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim
fails where prison officials would have disciplined inmate for
policy violations notwith-standing his protected activity).

Under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) this Court
may dismiss a claim, at any time, if the action is frivolous,
malicious, fails to state a claim upon which relief may be

granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

While Plaintiff alleges a constitutional right, the alleged adverse action of a slight delay in mailing Plaintiff's document is not an act the Court considers sufficient to deter Plaintiff from exercising his constitutional rights. Moreover, Plaintiff's retaliation claim lacks the requisite causal connection. Finally, the facts do not support Plaintiff's retaliation claim against Scott. Accordingly, the Court will dismiss the claim pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

A reasonable jury could not find in favor of Plaintiff. For the above reasons, the Court will grant Defendants' Motion For Summary Judgment. (D.I. 152.) The Court will also grant in part and deny in part Plaintiff's Motion To Amend, and will deny as moot Plaintiff's Motion For Preliminary Injunction.[17] (D.I. 142,

---

[17]Defendants make a passing argument that Plaintiff did not exhaust his administrative remedies as required pursuant to 42 U.S.C. § 1997e. The Court reviewed this voluminous file and, contrary to Defendants' position, Plaintiff exhausted some of his claims (i.e., October 3, 2004, January 5, 2006, April 24, 2006) were returned "unprocessed" as the requests were not processed

143.)

    An appropriate Order will be entered.

---

through the grievance procedure.  (D.I. 160, App. B at exs. 3-4,
41-42, 96-97.)  Because Plaintiff had no available administrative
remedies, the exhaustion requirement need not be met.  Plaintiff
exhausted his administrative remedies for the April 4, 2006,
claim but he voluntarily dismissed the claim.  (D.I. 160, App. B
exs. 47-55; D.I. 65, 84.)